MICHIGAN CHEMICAL
CORP., Plaintiff,

v.

The TRAVELERS INDEMNITY
COMPANY, et al., Defendants.

No. G76–96 CA.

United States District Court,
W.D. Michigan, S.D.

Sept. 19, 1986.

Roger Clark, John Robison and Thomas J. McNamara, Warner, Norcross & Judd, Grand Rapids, Mich., for plaintiff; Mayer, Brown & Platt, Robert F. Finke, Chicago, Ill., of counsel.

Charles N. Dewey, Jr., Dilley, Dewey & Waddell, Grand Rapids, Mich., John R. Caffrey, James T. Ferrini and Thomas Burke, Clausen, Miller, Gorman, Caffrey and Witous, Chicago, Ill., for defendant Ins. Co. of North America.

Robert J. Eleveld, Varnum, Riddering, Wierengo & Christenson, Grand Rapids, Mich., Thomas J. Weithers, Hinshaw, Cul-bertson, Moelmann, Hoban & Fuller by John L. Kirkland, Chicago, Ill., Robert J. Feldhake, Lord, Bissell & Brook, Los Angeles, Cal., for defendant Aetna Cas. & Sur. Co.

William G. Reamon, Law Offices of William G. Reamon, P.C., Grand Rapids, Mich., Tyler and Canham by David M. Tyler, Detroit, Mich., Epton, Mullin, Segal & Druth, Ltd. by Gerald Mullin and Margaret Gull, Chicago, Ill., for defendant American Home Assur.

Dale W. Rhoades, Rhoades, McKee & Boer, Grand Rapids, Mich., John M. Briggs, III, Parmenter, Forsythe & Rude, Muskegon, Mich., Donald M. Haskell, Haskell & Perrin by Michael J. Sehr, Chicago, Ill., for plaintiff-intervenor American Mut. Reinsurance Co.

Jacobs, Williams & Montgomery, Ltd. by C. Barry Montgomery, Chicago, Ill., for defendant Midland Ins. Co.

OPINION

BENJAMIN F. GIBSON, District Judge.

On May 2, 1973, Michigan Chemical Corporation ("MCC") at its St. Louis, Michigan plant, accidentally shipped polybrominated biphenyl ("PBB") instead of magnesium oxide to Farm Bureau Services. The PBB was later mixed with livestock feed and as a result a multiplicity of claims were made against MCC for damages arising out of the ingestion of PBB by livestock. Plaintiff MCC filed this diversity action to obtain a declaratory judgment construing certain insurance contracts and fixing the amount of insurance coverage available to pay the resulting damage from PBB ingestion. Each insurance contract contains similar language limiting the insurer's aggregate liability for all losses during the policy year as well as limiting the insurer's liability for losses caused by each "occurrence." An occurrence under these insurance contracts was defined as each misshipment of PBB that caused damage and not the number of injuries or claims resulting. *Michigan Chemical Corporation v. American Home Assurance Company, et al.,*

728 F.2d 374 (6th Cir.1984). Following that interlocutory appeal and decision, this Court ruled that there was one misshipment of PBB on May 2, 1973; therefore, the insurer's liability was limited to one occurrence.

That ruling on January 17, 1986, resulted in the granting of defendants American Home Assurance Company ("American Home"), Aetna Casualty & Surety Company ("Aetna"), and Insurance Company of North America ("INA") motions for summary judgment against MCC. Before the Court is MCC's motion for reconsideration, and Aetna and INA's motions for ruling and final judgment pursuant to Fed.R. Civ.P. 54. The motions will be addressed seriatim.

MOTION FOR RECONSIDERATION

On January 17, 1986, this Court granted defendants American Home, Aetna, and INA's motions for summary judgment determining that there was only one misshipment of PBB and therefore only one "occurrence" within the meaning of the insurance policies at issue. Plaintiff MCC has moved for reconsideration.

MCC claims a genuine issue of fact exists as to whether or not any of the bags of magnesium oxide shipped by MCC to Farm Bureau Services were cross-contaminated with PBB. MCC claims the cross-contamination complaints filed against it form a separate basis for finding product liability coverage. It is alleged that each shipment of products contaminated with PBB is also an "occurrence" constituting a negligent act and subject to coverage by the insurer. These shipments are separate from the one misshipment of PBB instead of magnesium oxide to Farm Bureau Services found to have occurred by this Court.

The standards and burdens for granting a summary judgment motion are well

known and will not be repeated for purposes of this motion for reconsideration.

The issue of cross-contamination[1] is not new to this case. Plaintiff presented this issue as early as November, 1984, in a statement in opposition to a renewed motion for summary judgment. This issue was also litigated in *Tacoma v. Michigan Chemical Corporation, et al.,* No. 2933 (Wexford County Circuit Court, Mich., October 26, 1978). Further this Court in its opinion of January 17, 1986, found in its conclusion of how contamination occurred that:

> [T]he possibility that the contamination problem was caused by "cross-contamination" of MgO products by relatively small quantities of PBB present in the environment at the St. Louis plant where both MgO and PBB were manufactured was eliminated because of the high concentrations of PBB being found in the feeds. In fact, the only conclusion permitted by the record in this case is that the packaging of both FF–1 and MgO and similar 50–pound kraft bags led to the accidental shipment of bags of Fire-Master FF–1 and one or more of FSB's orders for NutriMaster and the subsequent use of FireMaster FF–1 in place of NutriMaster by FBS when mixing various animal feeds in which MgO was an additive. Opinion, at 8.

Plaintiff presents evidence not previously considered by this Court in its determination of how the PBB contamination occurred and the number of occurrences (or misshipments) for insurance purposes. This evidence is a voluminous compendium of test results prepared by an employee of MCC suggesting that PBB (and/or other chemicals) contaminated other products produced and sold by MCC. This evidence was an exhibit used in the *Tacoma* trial.

---

1. Cross-contamination is found to have occurred in two forms. One is through the construction of the Farm Bureau Services plant itself. For example, when feed, mixed with PBB instead of MgO, was run through the conveyor system, the following feed mixture was contaminated due to remnants of PBB on the conveyor system itself. The *Tacoma* court found that no carry-over contamination occurred after mid-April 1984. *Tacoma,* at 31. The second form of cross-contamination is called equipment contamination. This means that days later, due to the electrostatic properties of PBB, the equipment retained particles of PBB which then showed up in any material with which that machine came in contact with. *Id.* at p. 31–32.

Upon review of the compendium of test results and the record before this Court, the Court finds the allegations of cross-contamination do not present an issue of material fact; the allegations do not form a separate basis for product liability coverage.

In the *Tacoma* trial, the most important aspect of the trial was to determine the toxicological effects of PBB in various amounts. *Tacoma*, at 33. The Court found that the plaintiffs did not prove any damage to their cattle through PBB contamination. Instead the evidence proved that in small amounts PBB was not toxic. *Id.* at Preface, p. 4. Plaintiff in *Tacoma* had claimed that PBB was toxic at any level and also that their herd was contaminated by PBB feeds as well as by salt and magnesium oxide. *Id.* at 37, 107. Plaintiffs failed to prove damage from PBB and failed to prove damage from MgO and salt products. *Id.* at 131, 144 and Appendix I. The Court found that there was no direct evidence to prove that MCC's MgO salt products purchased by the plaintiff could have contained levels of BP6. In fact there was circumstantial evidence to the contrary. *Id.* at 144–145. "[F]rom the Court's finding regarding the toxicity of BP6, there is no possibility that BP6 at levels around .002 ppm or less in salt, which is consumed by the animals in extremely small amounts, could have any toxic effect." *Id.* at 145.

The *Tacoma* court found that small levels of PBB were not toxic and no damage incurred. It further found that the minute amounts of BP6 could not cause any toxicological effect. Therefore any claims of cross-contamination were not enough to sustain damage and therefore no liability was incurred by MCC. The Court held so even with the compendium of test results as part of the evidence before it.

It is clear upon review of the *Tacoma* trial that cross-contamination was not sufficient to create liability upon MCC and derivatively its insurer. Without property damage, there is no liability upon an insurer. For liability under the insurance policy, there must not only be an event that is negligent but there must also be damage. Under the finding of the *Tacoma* court, there can be no liability due to the minuscule amount of PBB or other chemicals present in MCC products.

For the reasons stated above, plaintiff's motion for reconsideration is denied and this Court affirms it previous decision granting defendants American Home, Aetna, and INA's motions for summary judgment.

MOTION FOR FINDING PURSUANT TO RULE 54

Both Aetna and INA have moved for a final order pursuant to Rule 54 of the Federal Rules of Civil Procedure, to the effect that judgment be entered for them respectively and against plaintiff MCC. Defendants INA and Aetna contend that there is no remaining issue which involves them.

The Court is in agreement and grants defendants motion for final judgment against plaintiff and for defendants INA and Aetna. The Court also grants final judgment for American Home and against MCC, there being no other claim remaining between the two parties.